BENTON, Judge.
Linda Longhi appeals a final order entered by Department of Health and Rehabilitative Services (HRS) Hearing Officer Sandahl affirming HRS’s denial of benefits under the Florida Medicaid Institutional Care Program. We affirm the denial of benefits for some but not all of the months contemplated by HRS’s order.
On July 18, 1995, Geraldine Anderson, the daughter with whom Ms. Lon-ghi lived, received a cheek in the amount of $46,946.70, representing the proceeds of a liquidated annuity that belonged to Ms. Lon-ghi. Ms. Anderson deposited the check in her own individual account. This transaction amounted to a transfer of assets “without fair compensation” within thirty months of applying for nursing facility benefits. Rule 10C-8.0181(1), Florida Administrative Code, provides:
If an individual who is applying for or receiving nursing facility services or Home and Community Based Services transfers assets within 30 months of application without fair compensation, ineligibility for these services will exist for the number of months determined by dividing the total uncompensated value of the transferred assets by the statewide average monthly private-pay amount at the time of application, as determined by the department for care in a skilled facility.
But the rule goes on to provide: “If the client can successfully prove that the transfer occurred exclusively for a reason other than to become Medicaid eligible, no penalty will be imposed.” Fla. Admin. Code R. 10C-8.0181(l)(b). See Pentuik v. Department of Health and Rehabilitative Servs., 584 So.2d 1098 (Fla. 1st DCA 1991). In its Manual 165-22, HRS concedes that the post-transfer “traumatic onset of disability” or diagnosis of a “previously undetected disabling condition” “may indicate that assets were transferred exclusively for some purpose other than establishing eligibility.” At 1600-93.
Appellant had the burden to prove that her gratuitous transfer to her daughter “occurred exclusively for a reason or purpose other than to become eligible for Medicaid benefits.” Pentuik, 584 So.2d at 1100.
In reviewing a denial of benefits based on a failure to meet that burden, the standard of review is whether the hearing officer’s decision is supported by competent substantial evidence.
Id. We conclude that competent substantial evidence supports the hearing officer’s findings, except insofar as she found that Ms. Longhi’s use of funds to retire the mortgage on her daughter’s house was an effort to gain Medicaid eligibility.
Ms. Anderson’s testimony and supporting documentation showed that Ms. Lon-ghi liquidated her annuity in order to pay the amount necessary ($28,573.29) to avoid the imminent foreclosure of a mortgage on Ms. Anderson’s house. Uncontroverted evidence established that the decision to pay the mortgage off was made, and a written request for the annuity proceeds was mailed, before Ms. Longhi fell and broke her hip. That the money did not change hands until six days after the fall was a fortuity.
Ms. Anderson used the money to pay the mortgage debt in full, and gave an account *585 ing of sorts for the $18,373.41 balance. The hearing officer concluded that this evidence did not clearly and convincingly rebut the presumption that establishing Medicaid eligibility was a consideration in Ms. Anderson’s receipt and expenditure of the annuity proceeds. But this conclusion does not square with the undisputed evidence that Ms. Lon-ghi decided, before she was incapacitated by her fall and the sequelae, that her daughter should discharge the mortgage debt.
On the other hand, there was no evidence that before she fell and broke her hip she had even discussed with her daughter the other uses to which the money was put. The evidence did not, indeed, rule out the possibility that Ms. Longhi never consented to expenditure of the $18,373.41 balance.
We reverse the final order insofar as it renders Ms. Longhi ineligible for benefits on account of the funds her daughter used to pay off the mortgage on her home, but affirm the final order otherwise, and remand for further proceedings consistent with this opinion.
BARFIELD, C.J., and ERVIN, J., concur.